J.C. Higgins Company, Inc. *vs.* Bond Bros., Inc., & others.[1]

No. 01-P-585.

Middlesex. March 3, 2003. - July 10, 2003.

Present: Cowin, Kass, & Green, JJ.

*Interest. Contract,* Construction contract, Subcontract, Public works.

A Superior Court judge properly concluded that prejudgment interest on disputed amounts recovered by a subcontractor from a general contractor on a public construction project accrued under G. L. c. 231, § 6C, rather than at the penalty rate under G. L. c. 30, § 39K. [539-541]

Civil action commenced in the Superior Court Department on November 17, 1989.

The case was heard by *Mitchell J. Sikora,* J., on a master's report.

*Kieran B. Meagher* for the defendants.

*Peter J. Gagne* for the plaintiff.

Green, J. In this case, we consider whether prejudgment interest on disputed amounts recovered by a subcontractor from a general contractor on a public construction project should accrue under G. L. c. 30, § 39K, or G. L. c. 231, § 6C. A judge of the Superior Court concluded that G. L. c. 231, § 6C, governs, and the general contractor appealed. We affirm the Superior Court judgment.

A. *Background.* This dispute arises out of the renovation and expansion of the Hynes Convention Center in Boston, a public construction project governed by G. L. c. 149, §§ 44A-44H. The defendants, Bond Bros., Inc., and Dugan & Meyers Construction Co., Inc., operating as a joint venture (we shall refer to the two firms together as Bond), acted as the general

[1]Dugan & Meyers Construction Co., Inc., and The Insurance Company of North America.

contractor for the project. The plaintiff, J.C. Higgins Company, Inc. (Higgins), served as a subcontractor performing heating, ventilation, and air conditioning work. The Massachusetts Convention Center Authority (MCCA) was the awarding authority.

Following substantial completion of the project on October 15, 1988, MCCA sued Bond for breach of contract, claiming damages arising out of construction delays. MCCA also withheld over $8 million of the contract price from Bond. Bond counterclaimed for the contract balance and amounts for extra work performed, along with delay and disruption damages. In November, 1989, Higgins filed this action under G. L. c. 149, § 29, against Bond and Bond's surety (The Insurance Company of North America), seeking, as relevant here, the balance of its subcontract and amounts for extra work performed. Bond disputed the amounts due to Higgins and counterclaimed for delay and disruption damages, asserting that Higgins did not complete its work according to schedule.

In July, 1994, Bond (with its surety) and MCCA entered into a settlement agreement, under which MCCA agreed to pay $15.5 million to Bond and various subcontractors. As part of the settlement, MCCA issued a joint check to Bond and Higgins in the amount of $1,184,012.06, representing Bond's calculation of the subcontract balance (plus extras) due Higgins ($771,894.54), plus interest on that amount calculated at the rate specified in G. L. c. 30, § 39K (amounting to $412,117.52). On September 22, 1994, Bond and Higgins deposited the check by agreement into an interest-bearing joint escrow account.

The case between Higgins and Bond was referred to a master. After a 45-day hearing, the master found that Higgins was entitled to its subcontract balance, plus additional amounts for change orders and extra work performed, in the amount of $818,692. The master awarded interest on that amount under G. L. c. 231, § 6C, at the prescribed rate of twelve per cent, rather than under G. L. c. 30, § 39K. In reviewing the master's final report, the Superior Court judge accepted the master's

conclusion that G. L. c. 231, § 6C, applied rather than G. L. c. 30, § 39K.[2]

B. *Discussion.* General Laws c. 231, § 6C, provides that "[i]n all actions based on contractual obligations," and resulting in "judgment for pecuniary damages," interest "shall be added" at the rate specified under the contract or, if not specified, at the rate of twelve per cent. *Id.*, as amended through St. 1982, c. 183, § 3. The purpose of G. L. c. 231, § 6C, is to compensate a party for the loss of use, or unlawful detention, of money after the date that payment is due. See *Perkins Sch. for the Blind* v. *Rate Setting Commn.*, 383 Mass. 825, 835 (1981). The right to interest under § 6C extends to claims under construction subcontracts. See *John W. Egan Co.* v. *Major Constr. Mgmt. Corp.*, 46 Mass. App. Ct. 643, 649-650 (1999).

Bond contends that the interest on Higgins's recovery should be computed in accordance with G. L. c. 30, § 39K, rather than G. L. c. 231, § 6C, because Bond's default was caused by MCCA's failure to pay Bond under a public construction contract. General Laws c. 30, § 39K, sets out a particular payment scheme applicable to public construction contracts. Under that section, an awarding authority on a public construction project is required to make periodic and final payments to a general contractor. If the authority fails to make payment in accordance with the statute, it is required to pay daily "penalty" interest, at the rate of three percentage points above the rediscount rate then charged by the Federal Reserve Bank of Boston, commencing from the first day after payment is due until payment is made.[3] G. L. c. 30, § 39K, as amended by St. 1971, c. 887, § 1. The statute also requires that the general contractor pay to each subcontractor "a portion of any such interest paid in accordance with the amount due each

---

[2]The judge concluded, however, that the statutory interest rate applied only to the period from December 20, 1988 (when Bond's payment was due to Higgins) to September 22, 1994 (when Higgins's and Bond's joint escrow account was opened). The judge limited Higgins's recovery of interest for the period from September 22, 1994, onward, to that actually accrued on the escrow account. Neither party challenges the judge's determination of interest for the period following September 22, 1994.

[3]Though designed as a penalty, the rate prescribed by G. L. c. 30, § 39K, was at all times relevant to this case lower than the general statutory rate prescribed by G. L. c. 231, § 6C.

subcontractor." *Ibid.* According to Bond, MCCA's failure to pay Bond under the general contract entitled Bond to penalty interest under § 39K, and Bond, in turn, was required to pay to Higgins its pro rata portion of that penalty interest (and no more).

Bond's assertion that its obligations are governed by § 39K rests on a self-serving premise. That is to say, MCCA and Bond resolved their dispute by means of a settlement agreement, rather than by adjudication. While MCCA and Bond certainly were free to agree on the interest applicable to the amounts subject to their dispute, it appears clear that § 39K would not have applied to Bond's claim against MCCA if it had been fully adjudicated. The amounts Bond claimed were disputed under its contract with MCCA, and we have held in an analogous context that disputed amounts under a public works contract accrue interest under G. L. c. 231, § 6C, rather than at the penalty rate under G. L. c. 30, § 39G. See *D. Federico Co.* v. *New Bedford Redev. Authy.*, 9 Mass. App. Ct. 141, 146-147 (1980). See also *Acme Plastering Co.* v. *Boston Hous. Authy.*, 21 Mass. App. Ct. 669, 677 (1986) ("subjects [of §§ 39G and 39K] are related and the purposes are identical"). Contrast *Thomas O'Connor & Co.* v. *Medford*, 16 Mass. App. Ct. 10, 19 (1983) (imposing penalty interest under § 39K, where authority failed to dispute contract amount in manner required by statute). Moreover, if (as MCCA alleged in its suit against Bond) Bond breached its obligations under the construction contract, that breach would have precluded Bond from recovering § 39K interest as matter of law. See *Peabody N.E., Inc.* v. *Marshfield*, 426 Mass. 436, 445 n.11 (1998); *Acme Plastering Co.* v. *Boston Hous. Authy.*, *supra* at 675-677. It was not open to Bond to determine, by agreement with MCCA, that § 39K controls the interest on Bond's liability to Higgins.[4]

For the same reason, it is unpersuasive for Bond to complain that computing interest under G. L. c. 231, § 6C, rather than G. L. c. 30, § 39K, works an injustice (because Bond is thereby

---

[4]Our view of the case makes it unnecessary for us to decide whether the language of § 39K to which Bond refers limits the right of subcontractors in public construction contracts to recover interest under G. L. c. 231, § 6C, or whether it merely imposes an obligation on general contractors to pay over any excess penalty interest they receive under the general contract.

obliged to pay more to Higgins than the amount Bond actually received from MCCA for Higgins's portion of the work).[5] The amounts Bond received in settlement of its claim against MCCA were based on its own calculations of the amounts, including interest, owed to Higgins. Any lack of correspondence between the amounts Bond allocated in its settlement with MCCA to interest on the amounts owed to Higgins is accordingly the result of Bond's own calculations in its settlement with MCCA, rather than of any injustice inherent in the statutory scheme.

The judgment of the Superior Court is affirmed. Under G. L. c. 149, § 29, Higgins is entitled to reasonable attorney's fees for this appeal, and may accordingly, within twenty days of this decision, file with this court and serve on Bond a motion for determination of its attorney's fees incurred on appeal, supported by an affidavit detailing such fees. Bond may, within twenty days thereafter, file with this court and serve on Higgins an opposition to the amount of fees so claimed.

*So ordered.*

---

[5] It is perhaps a matter of some curiosity that the so-called "penalty rate" imposed by § 39K is currently lower than the ordinary rate imposed by § 6C, but given the posture of the present case it is unnecessary to conduct further inquiry into the potential ramifications of that fact.