**TIVERTON POWER ASSOCIATES LIMITED PARTNERSHIP, a Rhode Island limited partnership, Calpine Tiverton, Inc., a Delaware corporation, Rumford Power Associates Limited Partnership, a Maine limited partnership and Calpine Rumford, Inc., a Delaware corporation, Plaintiffs,**

v.

**THE SHAW GROUP, INC., a Louisiana corporation, Defendant.**

No. CIV.A.01–10914–WGY.

United States District Court, D. Massachusetts.

June 16, 2005.

Wayne F. Dennison, Brown, Rudnick, Berlack & Israels LLP, Boston, MA, for The Shaw Group, Inc., Defendant.

John R. Dingess, Kirkpatrick & Lockhart LLP, Pittsburgh, PA, for Calpine Rumford, Inc., Calpine Tiverton, Inc., Rumford Power Associates Limited Partnership, Tiverton Power Associates Limited Partnership, Plaintiffs.

William M. Dolan, III, Brown Rudnick Berlack Israels LLP, Providence, RI, for The Shaw Group, Inc., Defendant.

Charles J. Dyer, Kirkpatrick & Lockhart Nicholson Graham LLP, Boston, MA, for Calpine Rumford, Inc., Calpine Tiverton, Inc., Rumford Power Associates Limited Partnership, Tiverton Power Associates Limited Partnership, Counter Defendants.

Brian J. Lamoureux, Brown Rudnick Berlack Israels LLP, Providence, RI, for The Shaw Group, Inc., Defendant.

Andrew L. Swope, Kirkpatrick & Lockhart, LLP, Harrisburg, PA, for Calpine Rumford, Inc., Calpine Tiverton, Inc., Rumford Power Associates Limited Partnership, Tiverton Power Associates Limited Partnership, Plaintiffs.

Roger C. Zehntner, Kirkpatrick & Lockhart LLP, Boston, MA, for Calpine Rumford, Inc., Calpine Tiverton, Inc., Rumford Power Associates Limited Partnership, Tiverton Power Associates Limited Partnership, Counter Defendants.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

After a full trial by jury, this Court entered a final judgment in the amount of $314,878.78 in favor of Tiverton Power Associates Limited Partnership. Tiverton here files a motion to amend or alter the judgment of January 31, 2005, seeking to add $139,029.31 in prejudgment interest. The facts are taken from the Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Amend or Alter Judgment ("Pls.' Mem.") [Doc. No. 159], and Defendant's Opposition to Plaintiffs' Motion to Amend or Alter Judgment ("Def.'s Opp'n") [Doc. No. 160], as well as the Shaw Group, Inc.'s previously filed Memorandum of Law in Support of its Motion for Partial Summary Judgment filed on September 30, 2003 ("Def.'s Summ. J. Mem.") [Doc. No. 61]. The plaintiffs, Tiverton Power Associates Limited Partnership, Calpine Tiverton, Inc., Rumford Power Associates Limited Partnership, and Calpine Rumford, Inc. (together, "Tiverton") entered into an agreement with the Defendant, The Shaw Group, Inc. ("Shaw"), on July 6, 2000 (the "July 6 Agreement"). Pls.' Mem. at 1; Def.'s Opp'n at 1. Shaw ac-

quired the assets of Stone & Webster in the course of Chapter 11 bankruptcy proceedings. Under a contract dated July 6, 2000, Shaw was to satisfy certain liens and claims. Pls.' Mem. at 1–2; Def.'s Summ. J. Mem. 2–3. Such payments were to be capped at $34,000,000, and Shaw was to pay Tiverton cash for any difference between such cap and the amount paid on such liens and claims. Pls.' Mem. at 1–2; Def.'s Summ. J. Mem. 2–3. Shaw was to guaranty the $34,000,000 obligation through bonds or other guaranties. Pls.' Mem. at 2. Shaw provided Tiverton a lien discharge bond (the "Liberty Bond") in the amount of $27,100,042.51 through Liberty Mutual Insurance Company, Shaw's surety. Pls.' Mem. at 2.

On May 29, 2001, Tiverton filed a breach of contract claim and sought a declaratory judgment with respect to the July 6th Agreement. *Id.* Federal jurisdiction is based on diversity of citizenship and an amount in controversy in excess of $75,000. 28 U.S.C. § 1332(a); Pls.' Mem. at 2. Tiverton amended the complaint by adding a claim for an equitable accounting as well as a claim under Massachusetts General Laws chapter 93A. Pls.' Mem. at 2. The Court dismissed the chapter 93A claim and

the matter proceeded to trial on the breach of contract action. *Id.* The dispute between the parties rested largely on the scope of the liens and claims to be paid by Shaw. Def.'s Summ. J. Mem. at 3.

On December 2, 2004, Shaw sent Tiverton a check dated November 30, 2004, Def.'s Opp'n Ex. A, in the amount of $364,-078.00—comprised of $314,878.78 (the amount Shaw conceded it owed Tiverton) and $49,199.22 in interest.[1] Def.'s Opp'n at 1–2. Tiverton received Shaw's payment, but did not cash the check. Def.'s Opp'n at 2. On January 31, 2005, following a three-week trial, the jury returned a verdict in favor of Tiverton. One must recognize, however, that the jury verdict ostensibly in the amount of $314,878.78—the smallest amount permitted pursuant to this Court's instructions—was, in actuality, a win for Shaw.[2] Pls.' Mem. at 2; Def.'s Opp'n at 1. This Court entered judgment for Tiverton in the amount of $314,878.78 "with interest at the statutory rate."[3] Had Tiverton cashed the check it received from Shaw, which was in principal amount the exact amount of the verdict,[4] the judgment entered by this Court would have been for $0. This becomes important as

1. Shaw had calculated this interest at 6.25% from May 10, 2002, as it contends Delaware law provides.

2. Though the verdict was in favor of Tiverton, Shaw was the actual victor as the jury agreed with Shaw's calculation and interpretation of the scope of the liens and claims included in the July 6th Agreement. The jury gave Shaw credit for having paid approximately $33,700,000 on such claims to subcontractors and suppliers, returning a verdict for $314,878.78, the exact amount conceded by Shaw as the amount it owed Tiverton. Def.'s Summ. J. Mem. at 3.

3. The Court docket initially reflected, on January 31, 2005, only the judgment in favor of Tiverton. The judgment was reentered on February 1, 2005 to read "in the amount of

$314,878.78 with interest at the statutory rate."

4. Shaw expressed disagreement at the time with this Court's instruction to the jury not to consider the check in its deliberations, despite the Court's assurance to the jury that Shaw would not be required to make duplicative payments. Def.'s Opp'n at 2; Tr. of Jury Trial, Jan. 27, 2005 [Doc. No. 154] at 49 (jury instructions). Shaw objected to such approach, "which was later mirrored in the court's general verdict form. The verdict form directed a verdict in favor of Plaintiffs in some amount irrespective of the fact that Plaintiffs had already been tendered everything that Shaw believed (and the jury found) that the Plaintiffs were owed." Def.'s Opp'n at 2 n.3.

this Court considers the purpose for awards of prejudgment interest.

## 1. DISCUSSION

### a. Standard of Review

State law governs the determination of prejudgment interest. *Doty v. Sewall,* 908 F.2d 1053, 1063 (1st Cir.1990); *Mill Pond Assocs., Inc. v. E & B Giftware, Inc.,* 751 F.Supp. 299, 300 (D.Mass.1990); Charles Alan Wright and Mary Kay Kane, Law of Federal Courts, § 98 at 704 (6th ed. 2002) ("Whether the judgment is to include interest from the time of the wrong to the entry of judgment is a question of the measure of damages, to be resolved by state law or by any applicable federal statute or in the discretion of the court, as the case may be."). Prejudgment interest is granted "to compensate a damaged party for the loss of use or unlawful detention of money." *Conway v. Electro Switch Corp.,* 402 Mass. 385, 390, 523 N.E.2d 255 (1988). The award of prejudgment interest lies in the discretion of the Court. *McDonough v. City of Quincy,* 353 F.Supp.2d 179, 191 (D.Mass.2005) (deciding that the award of prejudgment interest was "reasonable and appropriate in order to make [plaintiff] whole"); *Fleet Fin. Group, Inc. v. Advanta Corp.,* No. 16912–NC, 2003 WL 22707336 at *4 (Del.Ch. Nov.7, 2003) (noting that the Court has "broad discretion, subject to principles of fairness" in granting prejudgment interest). The Court also has "broad discretion" in determining the prejudgment interest rate. *Cottrill v. Sparrow, Johnson & Ursillo, Inc.,* 100 F.3d 220, 225 (1st Cir.1996) (involving prejudgment interest in an ERISA context); *Berndt v. Kaiser Aluminum & Chem. Sales, Inc.,* 629 F.Supp. 768, 770 (E.D.Pa. 1985), *aff'd* 789 F.2d 253 (3d Cir.1986) ("Determination of prejudgment interest is within the court's discretion."); *Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods., N.V.,* No. 18524–NC, 2003 WL 21555325 at *5 (Del.Ch. July 8, 2003) (noting that the Court "may deviate in its sound discretion" from the applicable rate of interest); *see also Radford Trust v. First Unum Life Ins. Co. of Am.,* 321 F.Supp.2d 226, 257 (D.Mass.2004) (quoting *Cottrill,* 100 F.3d at 225).

Here, the applicable Massachusetts law provides:

> In all actions based on contractual obligations, *upon a verdict,* finding or *order for judgment for pecuniary damages,* interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum from the date of the breach or demand. If the date of the breach or demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action . . . .

Mass. Gen. Laws, ch. 231, § 6C (emphasis added). "Because the Federal action commenced in the United States District Court for the District of Massachusetts was based on diversity of citizenship . . . the question [is] one to be determined by the law of Massachusetts, including its conflict of laws rules." *Morris v. Watsco, Inc.,* 385 Mass. 672, 674, 433 N.E.2d 886 (1982) (quoting *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)) (noting that "Federal Courts in diversity cases apply State law with respect to prejudgment interest" in answering a question certified from the United States Court of Appeals for the First Circuit).

### b. Which State's Law Is to Govern the Determination of Pre–Judgment Interest?

Tiverton seeks a liberal award of $139,029.31 in prejudgment interest. Pls.'

Mem. at 2–3. It asserts that Massachusetts law should apply and that they are "entitled to an award of pre-judgment interest at the statutory interest rate of 12%, as provided by Mass. Gen. Laws ch. 231, § 6C, from the date the complaint was filed, May 29, 2001, until the date judgment was entered, January 31, 2005." *Id.* Tiverton further argues that as the case is before this Court based on diversity jurisdiction, the substantive law of "the state that provided the basis for the verdict with respect to determinations regarding pre-judgment interest," namely Massachusetts, is to govern. *Id.* at 3 (citing *Blockel v. J.C. Penney Co., Inc.*, 337 F.3d 17, 29 (1st Cir.2003) and *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 772 (1st Cir.1994)). Tiverton argues that the principal place of contract performance was Massachusetts. *Id.* at 5. Tiverton asserts that the head of the team and the team resolving liens and claims was located in Boston, the spreadsheets summarizing the claims and "approved settlement amount" used by Shaw Group to resolve the liens and claims were produced n Boston, meetings to resolve the liens and claims took place in Boston, Tiverton had representatives in Massachusetts during this period of time (as did Shaw), and, what Tiverton describes as "perhaps most significantly, the checks that were used to pay the subcontractors and suppliers were issued by [Shaw] from offices located in Massachusetts .... These facts show that Massachusetts was the state where the majority of the performance took place with respect to the July 6 Agreement." *Id.*

Tiverton also argues that Delaware substantive law should not govern because:

[w]hile the July 6 Agreement was substantially negotiated and executed in Delaware, the parties' performance under the agreement occurred outside of Delaware. The liens and claims that were the subject of the July 6 Agreement were not addressed or resolved in Delaware .... [and] the checks that were issued by Stone & Webster/Shaw to pay the liens and claims relating to the Rumford Project were [not] issued from ... Delaware.

*Id.* at 4–5 (arguing also that Maine law should not apply as the checks were not issued from Maine and that bonds were never posted to remove liens filed against the Rumford project in Maine). As such, Tiverton asserts,

Since the substantive law of Delaware directs a court to look to the place where a contract is to be performed to determine a party's entitlement to pre-judgment interest and Shaw's performance predominantly took place in Massachusetts, the law of Massachusetts will determine whether and in what amount [Tiverton] are entitled to pre-judgment interest.

*Id.* at 6 (indicating that the determination should be controlled by chapter 231 section 6C of the Massachusetts General Laws).[5]

Shaw disagrees with Tiverton's characterization of applicable law, arguing instead that the prejudgment interest law of Delaware ought apply. Def.'s Opp'n at 3. Shaw argues that the Court must first look to Massachusetts law to determine which state's law to apply. *Id.* at 2 (quoting *Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, No. 83–1179–Y, 1991 WL 254420 at *1 (D.Mass. Nov.29, 1991) (Collings, M.J.) (stating that the law

---

5. As discussed infra, Tiverton argues in the alternative that should Massachusetts law not apply, Rhode Island law, also at the rate of 12 percent a year commencing with the date the action commenced, should apply. Pls.' Mem. at 7; *Fratus v. Republic W. Ins. Co.*, 147 F.3d 25, 30–31 & n. 6 (1st Cir.1998).

governing the contract controls to determine "whether, and at what rate, prejudgment interest" is appropriate)); *Morris*, 385 Mass. at 673, 433 N.E.2d 886 (noting as dicta, in a case involving an agreement by parties as to governing law in the context of the Uniform Commercial Code, that "[e]ven without an agreement concerning the governing law, it has been our practice to measure the damages recoverable for breach of contract according to foreign law where the law governs the contract." (citing *Atwood v. Walker*, 179 Mass. 514, 518–519, 61 N.E. 58 (1901), and *Steranko v. Inforex, Inc.*, 5 Mass.App.Ct. 253, 270, 362 N.E.2d 222 (1977))). Shaw argues that since Delaware law governs the contract, Delaware law controls the determination of prejudgment interest. Def.'s Opp'n at 3.

Shaw further disagrees with Tiverton's argument that one must look to Delaware's choice of law provision. *Id.* In *Cooper v. Ross & Roberts, Inc.*, 505 A.2d 1305, 1306 (Del.Super.Ct.1986), a case cited by Tiverton, the Delaware court explained that once a court looks to the foreign substantive law, in that case New Jersey, it does not

> look to New Jersey's conflict of laws rules which, if they applied here, might cause [the Court] to look back again from New Jersey law to Delaware law, thus resulting in an application of the doctrine of *renvoi*. For reasons set forth at length in The Restatement, application of that doctrine is disfavored
> . . . .

Def.'s Opp'n at 4 (quoting *Cooper*, 505 A.2d at 1307 n. 3; *Northeast Data*, 1991 WL 254420 at *1 (holding that the substantive law of the foreign state will apply in the determination of whether prejudgment interest is appropriate and, if so, the applicable rate) and Restatement of the Law (Second) of Conflict of Laws § 8 cmt. j ("[T]he forum will not seek to apply for-

eign choice-of-law rules in the area of . . . contracts.")).

It should be noted that this matter was originally before the Honorable Reginald C. Lindsay. It was reassigned to this Court on July 13, 2004 [Doc. No. 86]. Tiverton in fact agrees that Judge Lindsay determined that Delaware law applied to the contract and that the substantive law of Delaware should apply "at least initially." Pls.' Mem. at 3. Tiverton then argues, however, that "Delaware courts have concluded that the subject of prejudgment interest is governed by the substantive law of the state where the contract was to be performed." *Id.* (quoting *Cooper*, 505 A.2d at 1306). Accordingly, Tiverton urges this Court to "look to the place of performance to determine a party's entitlement to prejudgment interest." *Id.*; Pls.' Reply Mem. in Supp. of Pls.' Mot. to Amend or Alter J. [Doc. No. 161] at 2 ("Indeed, it would make little sense for a federal court sitting in diversity to apply Delaware law to determine a party's entitlement to pre-judgment interest when a Delaware court hearing the same case would have looked to the law of the state where performance took place."); *Stentor Elec. Mfg. Co., Inc. v. Klaxon Co.*, 125 F.2d 820, 822–23 (3d Cir. 1942) (establishing Delaware law that courts look to the place of contract performance to determine pre-judgment interest award); Pls.' Mem. at 4 (noting that the Third Circuit in *Stentor* stated that "when it came to the issue of damages, Delaware looked to the law of the state where the contract was to be performed. Delaware looked to the state of performance because 'the obligation to pay damages for the nonperformance of a contract is a matter of substantive right, imposed by law as a substitute for performance, and should therefore, be measured by the law of the place where such performance was promised.' The court concluded that a Delaware court would consider the issue of pre-judgment interest to be a matter of

substantive law that was to be decided by the laws of the place where the contract was to be performed." (internal citations omitted)).

Tiverton argues that Judge Lindsay, in making the determination that Delaware law governed contract interpretation, did not consider the place of performance. *Id.* (noting that Judge Lindsay considered other factors in arriving at his decision). Even if this Court were to follow this path, this Court concludes that the contract was performed in multiple states. *See* Pls.' Mem. at 7 (conceding, seemingly, in its alternative argument that a substantial amount of performance also took place in Rhode Island). Though Rhode Island and Massachusetts have identical interest rates, namely 12%, this Court cannot simply dictate that because those two states have 12% interest rates that a 12% rate should freely be applied. Conversely, according to Delaware law as articulated by the Third Circuit, this Court must look at where the contract was made, which in Judge Lindsay's determination was Delaware. *Smith v. Onyx Oil & Chem. Co.*, 218 F.2d 104, 111 (3d Cir.1955) (establishing that the law of the *place the contract is made will govern where performance takes place in multiple states*, noting that "courts, in cases where performance is called for *in different states*, show a strong tendency to refer the question to the law of the *place of contracting* .... [T]he Delaware cases discussed in our opinion in the *Stentor* case ... indicate pretty clearly that Delaware would be in accord with this general rule of the conflict of laws." (emphasis added)); Pls.' Mem. at 4 ("Judge Linds[a]y relied on the fact that the contract was entered into in Delaware, [and] was substantially negotiated in Delaware"); *see also* Def.'s Opp'n at 4 (citing *Smith*, 218 F.2d at 111).

The Massachusetts Supreme Judicial Court has expressly indicated that those decisions that have held that local law should govern interest payable where parties have not entered an agreement as to such interest are still good law, and that "even where the parties have not agreed on the law which governs their rights, the better rule may be in all instances to turn to the *law governing rights and duties under the contract to determine the interest payable for breach of contract." Morris*, 385 Mass. at 678, 433 N.E.2d 886 (citing Restatement (Second) of Conflict of Laws §§ 188 and 207, cmt. e (1971)) (emphasis added). The Supreme Judicial Court highlighted that "[e]ven without an agreement concerning the governing law, it has been [the Supreme Judicial Court's] practice to measure the damages recoverable for breach of contract according to foreign law where that law governs the contract." *Id.* at 675, 433 N.E.2d 886 (citing *Steranko*, 5 Mass.App.Ct. at 270, 362 N.E.2d 222) (explaining that "the justification for [the] rule that interest is payable according to Massachusetts law when damages are recoverable for breach of a contract governed substantively by the law of another jurisdiction finds support only in its longevity and in its convenience of application", *id.* at 676, 362 N.E.2d 222, and that "[t]he fact that it is convenient to apply local law ... cannot justify its application." *Id.* at 678, 362 N.E.2d 222.).

This Court agrees with Judge Lindsay's determination that Delaware law governs the parties' agreement. As the First Circuit indicated in *Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*,

In the absence of predesignation, choice of law [i]s governed by the tenets elucidated in *Travenol Labs., Inc. v. Zotal, Ltd.*, 394 Mass. 95, 474 N.E.2d 1070 ... (1985). *Travenol* involved nonpayment of invoices silent as to controlling law. The Supreme Judicial Court decided that Massachusetts law applied, relying on the Restatement view that courts should apply the "law of the state ....

that ... had a *more significant relationship to the matters in question*." 884 F.2d 1510, 1515 (1st Cir.1989) (holding the district court did not err in applying the Massachusetts statutory prejudgment interest rate where "no other state had an equally significant relationship to the transactions in question") (emphasis added).

This Court holds that Delaware substantive law, namely Delaware prejudgment interest at the Federal Discount Rate plus 5%, applies. *Stonington Partners*, 2003 WL 21555325 at *5 ("The legal rate of interest, which is the Federal Discount Rate plus 5%, is a benchmark from which the Court may deviate in its sound discretion.").

### c. Determination of the Period of Time For Which Prejudgment Interest Should be Awarded

■ Tiverton argues that "[w]here the date of the breach or demand is not established, pre-judgment interest is to be assessed from the date of the commencement of the action." Pls.' Mem. at 6 (arguing that as the jury returned a general verdict and made no determination as to date of breach, interest should be granted from the date the action was commenced)

(citing Mass. Gen. Laws ch. 231 § 6C and *Saint–Gobain Indus. Ceramics, Inc. v. Wellons, Inc.*, 246 F.3d 64 (1st Cir. 2001)). Shaw counters that Tiverton's calculation is "generous[ ]" and "erroneous[ ]." Def.'s Opp'n at 6. Rather than allowing interest from the date of commencement of a suit, Shaw argues that the calculation should be as of "the date payment is due (or, in some cases the subsequent date of demand)." *Id.* (citing *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del.1992) (indicating that where "the underlying obligation to make payment arises *ex contractu*, [the court] look[s] to the contract itself to determine when interest should begin to accrue.")).

Shaw asserts that since Shaw had to pay Tiverton the difference between $34 million and the aggregate amount it paid to settle or resolve the liens and claims relating to the projects, that the amount Tiverton was owed could not be determined "until *all* such liens and claims were settled or resolved. Therefore, the *earliest* date upon which payment was due from Shaw to Plaintiffs under the July 6 Agreement was the date of Shaw's last settlement with the subcontractors on and suppliers to Plaintiffs' Projects," namely May 10, 2002.[6] *Id.* at 7. Having decided that Delaware substantive law applies, this

---

6. Shaw argues, as reflected on its July 20, 2004 final settlement spreadsheet, an agreed-upon exhibit numbered Trial Exhibit No. 22, that May 10, 2002 was the date Shaw made its final settlement payment. *Id.* at 7. Shaw argues that Tiverton's "reliance on the meetings between the parties held in Massachusetts to discuss the ultimate resolution of the liens and claims is ... puzzling. Those were the meetings at which Plaintiffs refused to authorize the settlement of any of the liens and claims until Shaw acceded to Plaintiffs' erroneous interpretation of the July 6 Agreement." *Id.* at 6. Though this Court does not pass judgment on the delay, *cf. E.M. Fleischmann Lumber Corp. v. Resources Corp. Int'l*, 114 F.Supp. 843, 845 (D.Del.1953) (noting that "fairness and justice" call for exclusion of the time during which a delay was caused by the plaintiff), it does find the May 10, 2002 date compelling. Shaw emphasizes that in the payment of money to Tiverton, Shaw paid interest on the money as of the *"earliest* date upon which a breach giving rise to the jury's verdict could have occurred" even though the existence of a breach was unclear. Def.'s Opp'n at 7–8. Shaw urges that "[t]o the extent that this Court deems an award on interest to Plaintiffs to be appropriate, such interest should be measured from this date— May 10,2002—and not the date upon which Plaintiffs filed their now discredited complaint." *Id.* at 8 (footnote noting that Tiverton breached the July 6 Agreement as it "refused to settle any of the subcontractor or supplier claims" omitted).

Court disagrees with Tiverton's argument that prejudgment interest should be granted from the date the complaint was filed.

This Court agrees with Shaw and determines the earliest date as of which prejudgment interest would appropriately have been paid, in other words, the time from which Tiverton would have been entitled to the money, is May 10, 2002. In an esoteric sense, the statute that provides that "[i]n all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages," applies to this case. Mass. Gen. Laws, ch. 231, § 6C. Nevertheless, in reality, the verdict was not for damages and nor was there a breach by Shaw. The jury agreed with Shaw and returned a verdict accordingly.

■ Finally, Shaw states that the "most galling" of Tiverton's positions is its attempt to claim interest through the date of judgment when Shaw had already made a payment to them of $364,078.00 which was $314,878.78 plus $49,199.22 paid in interest. Def.'s Opp'n at 8. "[Tiverton] thus claim[s] that they are due thousands of dollars in additional interest for a period in which they had already been tendered full payment from Shaw." Id. (noting that Delaware law does not allow a party to "magnify his own loss") (citing Thompson v. State Bd. of Pension Trs., 552 A.2d 850 (Del.Super.1988)). To a certain extent, this Court agrees. While the verdict and judgment were, in a technical sense, for Tiverton, it was really Shaw that prevailed in this case at trial. But for Tiverton not cashing the check tendered by Shaw Group, the judgment in this case would have been for $0. Further, Shaw did, in fact, include $49,199.22 for interest when tendering the check based on the Delaware prejudgment interest rate from May 10, 2002. This Court, in its discretion, however, determines that Shaw calculation of the interest was flawed. Shaw used as its interest rate for the entire period the Federal Discount Rate on May 10, 2002, namely 1.25%, to arrive at the 6.25% rate. This oversimplifies the applicable Federal Discount rate, which fluctuated and increased during the applicable period, whether it be the May 10, 2002 to December 3, 2004 period determined by Shaw or, more importantly, the May 10, 2002 to January 31, 2005 time period which this Court rules is proper.

■ This Court determines the proper interest due, based on the applicable Federal Discount Rates as adjusted during the period from May 10, 2002 to the date of judgment, January 31, 2005,[7] based on a principal amount of $314,878.78 ($53.92 per diem), is as follows:[8]

| Time | Applicable Federal Discount | Legal Rate (Federal Discount Rate plus | Per Diem Interest | Number of Days in | Total Interest |
| --- | --- | --- | --- | --- | --- |

7. The interest to be paid from the date the check was sent to Tiverton, namely December 2, 2004, to the date of judgment, namely January 31, 2005, seems equitable to this Court as, had Tiverton cashed the check, Shaw would not rightly be entitled to such interest it has earned during this period.

8. This Court could have used other formulas. For example, this Court could have used an average annual Federal Discount Rate, averaging the highest Federal Discount rate for the years 2002—2005 inclusive, as in Cole v. Kershaw, No. 13904, 2001 WL 379571, *3–4 (Del.Ch. Mar.30, 2001). The per diem rate of interest in such a calculation would be $63.62. This Court considers the approach it takes in this matter to be correct and appropriate.

| Period | Rate | 5%) | Owed | Period | Owed |
|---|---|---|---|---|---|
| May 10, 2002 to November 5, 2002 | 1.25% | 6.25% | $53.92 | 180 | $ 9,705.60 |
| November 6, 2002 to January 8, 2003 | 0.75% | 5.75% | $49.60 | 64 | $ 3,174.40 |
| January 9, 2003 to June 24, 2003 | 2.25% | 7.25% | $62.54 | 167 | $10,444.18 |
| June 25, 2003 to June 29, 2003 | 2.00% | 7.00% | $60.39 | 5 | $ 301.95 |
| June 30, 2003 to August 9, 2004 | 2.25% | 7.25% | $62.54 | 407 | $25,453.78 |
| August 10, 2004 to September 20, 2004 | 2.50% | 7.50% | $64.70 | 42 | $ 2,717.40 |
| September 21, 2004 to November 9, 2004 | 2.75% | 7.75% | $66.86 | 50 | $ 3,343.00 |
| November 10, 2004 to December 13, 2004 | 3.00% | 8% | $69.01 | 34 | $ 2,346.34 |
| December 14, 2004 to January 31, 2005 | 3.25% | 8.25% | $71.17 | 49 | $ 3,487.33 |

Total Interest Owed: $60,973.98

Total Interest Paid to Date: $49,199.22

Total Interest Outstanding: $11,774.76 [9]

## 2. CONCLUSION

Even though the decision not to cash the check was entirely Tiverton's, in the spirit of the goal of prejudgment interest to "compensate a party for the loss of use . . . of money after the date that payment is due," *J.C. Higgins Co., Inc. v. Bond Bros., Inc.*, 58 Mass.App.Ct. 537, 539, 791 N.E.2d 367 (2003) (citation omitted), this Court holds Tiverton is entitled to prejudgment interest from the earliest date possible, May 10, 2005, to and including the date of the judgment, January 31, 2005, in the amount of $60,976.50. Giving Shaw credit for the interest payment already made by Shaw in the amount of $49,199.22 on December 2, 2004, this Court orders Shaw to pay Tiverton $11,774.76 in prejudgment interest rather than the $139,029.31 sought by Tiverton. Though Tiverton should not be penalized for defending its rights and seeking judgment, neither should Shaw be penalized for, in a manner this Court concludes to have been in good faith and as confirmed by the jury verdict, attempting to fulfill its responsibilities under the contract.

SO ORDERED.

---

9. This Court concludes $11,774.76 to be an equitable award of prejudgment interest. This amount does not take into consideration, nor is it at all reduced by, any assertions of delay resulting from Tiverton refusing to authorize settlements pursued by Shaw. *See Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 566 F.Supp. 1558, 1581 (D.Del.1983) (noting that delay caused by a plaintiff may justify a reduction or denial of prejudgment interest). This Court does not reach that issue. Though Tiverton seeks an award far greater than this Court's determination, given the circumstances of the jury verdict and judgment, the Court's prejudgment interest determination is proper.