Felipe **RAMOS ROSA**, et al., Plaintiffs,

v.

**TELEMUNDO CATV, INC.,**
et al., Defendant.

**Civil No. 93–1036 (JP).**

United States District Court,
D. Puerto Rico.

June 17, 1997.

Dennis A. Simonpietri, Rafael A. Oliveras López, Hato Rey, PR, for Plaintiffs.

Jaime E. Morales Morales, Pinto–Lugo & Rivera, San Juan, PR, Jane A. Becker–Whitaker, Troncoso & Becker, San Juan, PR, for Defendant.

## OPINION AND ORDER

PÍERAS, District Judge.

The Court has before it plaintiffs' Motion Requesting Payment of Legal Interest (**docket No. 164**), defendants' Opposition thereto (**docket No. 167**), and plaintiffs' Motion Requesting Expedited Consideration of Plaintiffs' Motion Requesting Order for Payment of Legal Interest (**docket No. 172**). For the reasons set forth below, the motion is hereby **GRANTED.**

## I. INTRODUCTION AND BACKGROUND

This suit was commenced by Felipe Ramos Rosa and his wife Emilia López Vega. Plaintiffs allege that defendants were negligent in filming an episode for the television show "TVO" at plaintiffs' residence on January 24, 1992, and that plaintiff Felipe Ramos Rosa had to undergo several surgical procedures as a result. The pertinent facts are not in dispute. The "TVO" show attempts to capture unsuspecting individuals on a hidden camera while they react to a scenario orchestrated to provoke a humorous response. On January 24, 1992, an actor dressed as an ambulance driver dropped off a "patient" bandaged from head to toe in gauze at the plaintiffs' house and stated that he had instructions to leave the patient at that address. Although the driver neither confirmed nor denied that the patient was the plaintiffs' son, the name of the patient was similar to that of their son, who was not at the residence at that moment. Plaintiffs believed, at least briefly, that the patient was their son, and soon thereafter plaintiff Felipe Ramos Rosa suffered an attack similar to a heart attack and was taken to the hospital. Mr. Ramos Rosa underwent two surgical procedures as a result of the episode.

The case went to trial against defendants Gabriel Suau and El Monóculo, Inc., and on April 11, 1995, the jury found that their negligence had injured the plaintiffs. On April 28, 1995, this Court entered judgment in accordance with the verdict rendered and accordingly awarded Mr. Ramos Rosa $55,000.00 in compensatory damages, and his wife, Mrs. López Vega, $10,000.00 for pain and suffering. This judgment was amended nunc pro tunc on March 8, 1996, to add $1,439.00 in stipulated medical expenses, bringing the total amount of the judgment to $66,439.00. Plaintiffs moved to set aside the judgment and for a new trial, on the grounds that the damages awarded were against the weight of the evidence adduced at trial. Plaintiffs appealed this Court's denial of their motion for a new trial, but later voluntarily dismissed their appeal. Shortly thereafter, the defendants consigned the sum of $66,439.00 to the Clerk of the Court because plaintiffs refused to accept the money without payment of interest, the matter that is the subject of the pending motion.

Plaintiffs now request that defendants be ordered to pay legal interest from the date the judgment was entered to the date of payment. The defendants allege that plaintiffs' appeal precluded them from satisfying the judgment, and therefore plaintiffs are not entitled to post-judgment interest. However, defendants cite no case law or legal argu-

ment in support of this contention. In other words, defendants claim that since plaintiffs caused the delay in payment of the judgment, they cannot now complain about that delay.

## II. STANDARD

28 U.S.C.A. § 1961(a) (West Supp.1994) states:

Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two-week United States Treasury Bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

The First Circuit has held that a plaintiff is entitled to post-judgment interest, even if it was not mentioned in the district court's judgment. *U.S. v. Schiavone and Sons, Inc.,* 450 F.2d 875, 876 (1st Cir.1971) and *Moore–McCormack Lines, Inc., v. Amirault,* 202 F.2d 893, 895 (1st Cir.1953). In addition, it has ruled that post-judgment interest begins to accrue from the date of the entry of the final judgment. *Cordero v. De Jesus–Mendez,* 922 F.2d 11, 15 (1st Cir.1990).

## III. DISCUSSION

Most commonly, an appellant is the party that did not prevail at the trial level. In such cases, the prevailing party may execute the judgment unless the appellant seeks a stay. *See* Fed.R.Civ.P. 62 and Fed. R.App. P. 8. District courts routinely require appellant to post a supersedeas bond to ensure payment of the judgment with interest if the party does not prevail on appeal. Thus, it is clear that if a losing party appeals a judgment and then either does not prevail on that appeal or voluntarily dismisses it, the party will be required to pay post-judgment interest.

█ The issue here, however, is whether a prevailing plaintiff who brings, and later dismisses, an appeal is entitled to post-judgment interest from the date the judgment was entered. We have found little case law on point concerning this issue. *Wheeler v. John Deere Co.,* 986 F.2d at 413 (10th Cir. 1993), is one of the few cases that deals with this issue. The situation in the case at bar is analogous to *Wheeler,* where the court applied the language of 28 U.S.C. § 1961 to an award of costs. In *Wheeler,* plaintiff-appellant Stephen Wheeler lost his right arm while servicing a Deere product, and brought a products liability suit against the manufacturer. The district court entered a $2.325 million judgment for Wheeler, which was later reversed due to substantive errors in the trial. On retrial, a second judgment dated October 30, 1989, was entered in favor of Wheeler for $1.960 million, plus interests and costs, which were not quantified. Both parties appealed the second judgment, which was affirmed. The district court finally quantified the costs in the sum of $15,085.95 on March 2, 1992. Deere tendered this amount to Wheeler, who refused to accept it, arguing that he was entitled to interest from the date of the October 30, 1989, judgment. The district court allowed Deere to discharge its liability for the costs by paying $15,085.95. The district court reasoned that plaintiff was not entitled to post-judgment interest because Wheeler had caused the delay in receiving payment by appealing the judgment. The Court of Appeals for the Tenth Circuit reversed, holding that the language in 28 U.S.C. § 1961 is both mandatory and broad. *Id.* at 415. Moreover, the court concluded that cutting off post-judgment interest would unfairly penalize Mr. Wheeler for pursuing his right to appeal. *Id.* at 416.

Like the defendants in *Wheeler,* defendants in the case at bar claim that they were precluded from satisfying the judgment because of plaintiffs' appeal. However, we agree with the *Wheeler* court that 28 U.S.C. § 1961(a) mandates post-judgment interest on any money judgment and it would be

unreasonable to deny plaintiffs the right to appeal by preventing them from collecting the post-judgment interest to which they are entitled. Therefore, this Court finds that plaintiffs are entitled to post-judgment interest.

 It is also established that the consignment of the funds may stop the running of interest. Charles Alan Wright and Arthur Miller, *Federal Practice and Procedure* § 2991 (1973); *Kotsopoulos v. Asturia Shipping Co.*, 467 F.2d 91 (2d Cir.1972); *Bank of China v. Wells Fargo Bank & Union Trust Co.*, 209 F.2d 467 (9th Cir.1953); *Fassbinder v. Pa. R. Co.*, 233 F.Supp. 574 (W.D.Pa.1964), and *Cordero*, 922 F.2d at 11. Therefore, defendants could have consigned the sum of $66,439.00 to the Clerk of the Court immediately following the judgment to cut off accrual of post-judgment interest. However, there is no indication in the record that they attempted to do so before December 4, 1996. The purpose of post-judgment interest is to compensate a successful plaintiff for any delay between the time judgment is entered until the defendant pays the judgment. *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 21 (1st Cir.1991) (given time value of the dollar, only way for an award to retain its stated worth is to award post-judgment interest); *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1280 (3d Cir.1987) (real issue lurking behind proper interpretation of section 1961 is who should bear the costs resulting from the loss of use of money). This Court finds that defendants' failure to consign the amount of the judgment deprived the plaintiffs of the rightful use of that money for over one and one-half years. In accordance with the aforementioned jurisprudence, the interest calculated on the $66,439.00 judgment shall run from April 28, 1995, the date of the initial judgment, to December 4, 1996, when the defendants consigned this sum to the Court.

 However, plaintiffs' attorney calculated the interest owed using Rule 44.3(a) of the Rules of Civil Procedure for the Commonwealth of Puerto Rico. In diversity actions, the interest mandated by 28 U.S.C. § 1961 must be calculated according to the federal rate, rather than the state rate. *Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir.1989) The statute previously imposed interest at the rate mandated by state rules, but was amended in 1982, *see* Pub.L. No. 97–164, § 302(a)(1)–(2) (1982), to require interest as defined by federal law. Most circuits have ruled on this issue and have held that § 1961 is properly applied in diversity actions and therefore the federal rate of post-judgment interest applies. *Bailey v. Chattem, Inc.*, 838 F.2d 149 (6th Cir.1988); *Nissho–Iwai Co. Ltd. v. Occidental Crude Sales, Inc.*, 848 F.2d 613 (5th Cir.1988); *Weitz Co. Inc. v. Mo–Kan Carpet, Inc.*, 723 F.2d 1382 (8th Cir.1983); *Northrop Corp. v. Triad Int'l Marketing, S.A.*, 842 F.2d 1154 (9th Cir.1988), and *G.M. Brod & Co., Inc. v. U.S. Home Corp.*, 759 F.2d 1526 (11th Cir. 1985).

Therefore, relying on the plain language of the text and the rulings on this issue in other circuits, we adhere to established precedent and hold that § 1961 governs diversity actions and that post-judgment interest in the diversity case at bar should be calculated at the federal rate. According to 28 U.S.C.A. § 1961(a) (West Supp.1997), the applicable interest rate is 6.28 percent.

## IV. CONCLUSION

Defendants are hereby **ORDERED** to pay interest of 6.28 percent on the total judgment of $66,439.00 from April 28, 1995, the date the judgment was entered, to December 4, 1996, the date they consigned the amount of the judgment to the Court. 28 U.S.C. § 1961 provides that interest is computed daily and compounded annually. In this case, that results in total interest of $6,833.00.

IT IS SO ORDERED.