Charles E. BUCKLEY, Plaintiff,

v.

BROWN PLASTICS MACHINERY, LLC; Plastics Machinery, LP; and Plastics Machinery Management, Inc., Defendants.

C.A. No. 04–206S.

United States District Court, D. Rhode Island.

May 9, 2005.

Marc DeSisto, Esq., DeSisto Law, Providence, RI, for Plaintiff.

Steven M. Richard, Esq., Nixon Peabody LLP, Providence, RI, Steven M. Ribiat, Esq., Butzel Long, PC, Bloomfield Hill, MI, for Defendants.

## DECISION AND ORDER

SMITH, District Judge.

Charles E. Buckley ("Plaintiff" or "Buckley") commenced a civil action sounding in breach of contract against Brown Plastics Machinery, LLC ("Brown"); Plastics Machinery, LP ("PMLP"); and Plastics Machinery Management, Inc. ("PMMI") (collectively "Defendants") on May 24, 2004. Approximately eight months later, on February 10, 2005, a jury returned a verdict in Buckley's favor awarding him damages for his contract claim. On that same day, this Court entered a judgment consistent with the jury's verdict in the amount of $758,277.[1] Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure,[2] Buckley

1. Defendants point out in their post-trial memorandum that the Judgment entered by this Court is incorrect and ought to be corrected. Based on Defendants' calculations, the judgment discrepancy amounts to $6. (Defs.' Mem. of Law in Supp. for J. as a

Matter of Law, at 2; Defs.' Mem. of Law in Resp. and Opp'n to Pl.'s M. to Am., at 5.)

2. "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e). Plain-

filed a timely Motion to Amend the Judgment to Include Prejudgment Interest.[3] The issues raised by Plaintiff's motion are three-fold: (1) whether Buckley is entitled to prejudgment interest; (2) if so, at what rate is the interest to be calculated; and (3) if interest is appropriate, and the rate is determined, from what point does the prejudgment interest accrue. The first two issues present minimal challenge, while the third requires the Court to look to the decisional law of the Supreme Court of Rhode Island, and federal courts applying Rhode Island law, for direction.[4] The Rhode Island Supreme Court has not yet been confronted with such an issue in a similar context, and therefore, has afforded this Court with limited guidance; however, several cases (both state and federal) provide insight regarding the policy-laden topic of prejudgment interest. Based upon the pertinent evidence offered at trial, and after a comprehensive examination of the applicable statutes and case law, this Court concludes that Plaintiff's motion shall be granted with respect to amending the Judgment to include prejudgment interest. However, for the reasons detailed below, the prejudgment interest to be added to the Judgment will be in the amount of $65,316.60, rather than the $371,555.73 which Plaintiff is seeking in his motion.

## I. Background

Plaintiff was employed with Brown as its President and Chief Executive Officer until August 31, 2001. At that point, Plaintiff ceased employment with Brown, and the two parties entered into a written agreement entitled, "Charles E. Buckley Transition" ("Transition Agreement"). On September 4, 2001, the Transition Agreement was signed by Plaintiff and Larry W. Gies, Vice President of Brown. The Transition Agreement contained enumerated rights and responsibilities of the two parties. In essence, the agreement obligated Plaintiff (1) not to compete with Brown, or any of its subsidiaries or affiliates; (2) not to hire or interfere with any of the employees of Brown, or its subsidiaries or affiliates; and (3) not to solicit or interfere with any of the customers of the same, from September 1, 2001, through March 1, 2003. Plaintiff also retained his investment in PMLP. In return, Brown was to make payments to Plaintiff, which included equity appreciation rights ("EARs").[5] Following the

tiff's motion was filed on February 18, 2005; judgment was entered on February 10, 2005. The First Circuit has clearly stated: "Rule 59(e) motions are aimed at *re* consideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued. Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." *Federal Deposit Ins. Corp. v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir.1992) (emphasis in original) (internal citations and quotations omitted). While Defendants have not raised any such argument with respect to Plaintiff's motion, for clarity, this Court points out that Plaintiff's Rule 59(e) motion is proper for raising the issue of prejudgment interest. *See Crowe v. Bolduc*, 365 F.3d 86, 92–93 (1st Cir.2004) (holding that Rule 59(e) is "the proper procedural vehicle for motions seeking to revise a judgment to include an initial award of prejudgment interest (whether mandatory or discretionary)"). In *Crowe*, the court limited its holding to "those cases in which the judgment, prior to the attempted revision, is altogether silent as to prejudgment interest." *Id.* at 93 n. 5.

3. Plaintiff also requests a determination on post-judgment interest. (Pl.'s Mem. of L. in Supp. of M. to Amend., at 3.) The issue of post-judgment interest will be addressed in a separate portion of this decision.

4. As will be discussed, the matter before the Court, is governed in part by Rhode Island law.

5. The EARs in question involve the sale of two of Brown's subsidiaries, Cumberland Engineering ("Cumberland") and Beringer.

signing of the Transition Agreement, Plaintiff received only a portion of the payments.[6] Defendants contended at trial that Plaintiff received all benefits that were immediately due, and that the EAR payments were subject to conditions that had not yet been met and were dependant on reference to the terms of a separate agreement. Plaintiff filed this lawsuit claiming Defendants had breached the Transition Agreement by failing to make the payments set forth in the document. Following a jury trial, a verdict was returned for Plaintiff, awarding damages in the amount of $758,277. After Judgment was entered on the verdict, Plaintiff moved to amend the Judgment to include prejudgment interest.

## II. *Discussion*

### A. *Prejudgment Interest*

█ This case is before the Court under federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 (2005). "In diversity cases, state law must be applied in determining whether and how much pre-judgment interest should be awarded." *Fratus v. Republic Western Ins. Co.*, 147 F.3d 25, 30 (1st Cir.1998); *see also Vulcan Automotive Equipment, Ltd. v. Global Marine Engine & Parts, Inc.*, 240 F.Supp.2d 156, 160–61 (D.R.I.2003) ("In order to determine the amount of interest owed plaintiff, this Court must apply the laws of the State of Rhode Island, because this case arises under federal diversity jurisdiction...."). Therefore, the first two issues to be addressed in Plaintiff's motion: (1) whether

he is entitled to prejudgment interest, and (2) if so, at what rate is the interest to be calculated, are governed by R.I. Gen. Laws § 9–21–10.[7] Putting aside Defendants' Motion for Judgment as a Matter of Law,[8] all parties are in agreement that, based on the language of § 9–21–10, Buckley is entitled to prejudgment interest on the awarded damages, at a rate of twelve percent per annum. The parties' contentions are supported by the decisions of the Supreme Court of Rhode Island. *See Joni Auto Rentals, Inc. v. Weir Auto Sales, Inc.*, 491 A.2d 328, 329–30 (R.I.1985) (upholding trial justice's award of prejudgment interest in breach of contract claim under § 9–21–10); *N. Smithfield Teachers Ass'n v. N. Smithfield Sch. Comm.*, 461 A.2d 930, 934 (R.I.1983) (reaffirming its prior holding in *Aiello Constr., Inc. v. Nationwide Tractor Trailer Training & Placement Corp.*, 122 R.I. 861, 413 A.2d 85 (1980), that § 9–21–10 applies to judgments in actions for damages for breach of contract).

There is disagreement, however, over the point in time from which the interest is to be calculated. Looking to what appears to be plain and unambiguous language within the statute, the Court is instructed that prejudgment interest "shall be added ... *from the date the cause of action accrued.*" R.I. Gen. Laws § 9–21–10 (emphasis added). It is the interpretation of this phrase that is at the core of the parties' dispute. The applicable case law (both state and federal) interpreting § 9–21–10, provides no clear answer. Moreover, while § 9–21–10 appears to mandate

---

**6.** The Transition Agreement states the amount due for the sale of Cumberland is $598,490. This amount has been off-set by $38,506, in accord with the terms of the Transition Agreement.

**7.** R.I. Gen. Laws § 9–21–10(a) provides, in pertinent part:

In any civil action in which a verdict is rendered or a decision made for pecuniary

damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein.

**8.** Defendants' Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial is addressed in a separate Order.

that the clerk *shall* include prejudgment interest in every civil judgment in accordance with the terms of the statute, this section has been interpreted so as not to abrogate the court's discretion to determine whether or to what extent a prevailing party may be entitled to such prejudgment interest. *See Holmes v. Bateson,* 583 F.2d 542 (1st Cir.1978) (concluding that the federal district court maintained discretion to determine that prejudgment interest under § 9–21–10 ought to be imposed); *Commercial Assocs. v. Tilcon Gammino, Inc.,* 801 F.Supp. 939 (D.R.I. 1992), *aff'd,* 998 F.2d 1092 (1st Cir.1993) (same).[9] In this case, there is no compelling reason to ignore the directive of the statute; therefore, Plaintiff's motion is appropriate for the application of § 9–21–10. The question is how the statute is to be applied.

### 1. *Interpretation of § 9–21–10*

In Buckley's Motion to Amend, he confidently asserts, "this action accrued on September 4, 2001, the date the contract was signed and the date the EAR payment became payable to [him]." (Pl.'s Mem. at 2.) It follows, according to Buckley, that prejudgment interest ought to begin running from that point in time. For Buckley, the calculation of the interest, based on the time the action accrued, is a simple, straight forward matter, which does not call for a lengthy discussion.

In contrast, Defendants maintain that if the Court determines that prejudgment

interest is appropriate, Plaintiff's cause of action did not accrue for purposes of § 9–21–10 on September 4, 2001, but rather on May 24, 2004, the date Plaintiff filed this lawsuit. Defendants aver that May 24, 2004, the filing date, is the earliest possible point from which prejudgment interest can be triggered. In order to resolve this question, this Court looks to decisions of the Rhode Island Supreme Court, as well as the federal courts applying Rhode Island law, for guidance.

### 2. *Accrual Based on Damages*

The Rhode Island Supreme Court has held that in a breach of contract action, the focus of the inquiry under § 9–21–10 is the point at which the plaintiff actually began to suffer damages. *See Blue Ribbon Beef Co., Inc. v. Napolitano,* 696 A.2d 1225, 1229 (R.I.1997); *Jolicoeur Furniture Co., Inc. v. Baldelli,* 653 A.2d 740, 755 (R.I.1995); *Miller v. Dixon Industries Corp.,* 513 A.2d 597, 602–03 (R.I.1986). It is also clear that the point at which the contract is breached is not *per se* the point of accrual for prejudgment interest. In *Blue Ribbon Beef Co.,* the court held that, although the plaintiff's breach of contract cause of action accrued for purposes of statute-of-limitations on the date of the breach, prejudgment interest under § 9–21–10 did not accrue until two years later. 696 A.2d at 1229–30. In that case, the plaintiff suffered damages from lost-profits after its municipal landlord, the city of Providence, breached its lease agreement.

**9.** Notwithstanding the mandatory language of the statute, courts have exercised such discretion by carving out exceptions where prejudgment interest is denied all together. *See Travelers Prop. & Cas. Corp. v. Old Republic Ins. Co.,* 847 A.2d 303 (R.I.2004) (declining to impose prejudgment interest where parties settled the matter after a jury verdict, but before resolution of an appeal because the settlement was reached with the injured party before the rights had been finally adjudicated); *Cabral v. DuPont,* 764 A.2d 114 (R.I.

2001) (holding that a specific agreement between the parties where a check was deposited into an interest bearing account amounted to an exception to the statute); *Martin v. Lumbermen's Mut. Cas. Co.,* 559 A.2d 1028 (R.I.1989) (concluding that the family of decedent killed in automobile accident was not entitled to prejudgment interest, even though the insurance proceeds were delayed, where the insurer offered to pay up to the policy limits, and the delay was caused entirely by the litigation commenced by the family).

*Id.* at 1227. Following a bench trial, a Rhode Island Superior Court justice entered a judgment in favor of the plaintiff which included interest from the date of the breach. *Id.* On appeal, the city claimed that the trial justice erred by including interest on the plaintiff's damages from the date of the breach, rather than the from the date the plaintiff's "damages actually began to accrue." *Id.* Because the trial justice found that the plaintiff did not sustain any damages until a point in time after the breach of the contract, the Supreme Court held that it was this date, after the breach, from which prejudgment interest should have been calculated. *Id.* 1228–29. The court cited § 9–21–10, and acknowledged that "[p]rejudgment interest generally begins from the date the cause of action accrues." *Id.* at 1229. In support of its holding, the court cited two prior decisions where it had held that the date of breach was not the date of accrual for prejudgment interest purposes. *Id.* (citing *Jolicoeur Furniture Co.,* 653 A.2d at 755 (holding that although breach of contract occurred in 1987, accrual of prejudgment interest on the resulting damages was delayed two years until the plaintiffs had satisfied conditions precedent to its performance); and *Miller,* 513 A.2d at 602–03 (holding, for the purpose of § 9–21–10, the plaintiff's claim properly accrued on the date he first could have exercised his stock options, rather than on the earlier date he alleged his employment contract was breached)).

The Rhode Island Supreme Court has repeatedly pointed to the dual purposes to be served by imposing prejudgment interest as part of the remedy for breach of contract: (1) to promote early settlement of claims, and (2) to compensate plaintiffs for the loss of use of money rightfully owed. *See Martin,* 559 A.2d at 1031; *Murphy v. United Steelworkers of America Local No. 5705, AFL–CIO,* 507 A.2d 1342, 1346 (R.I.1986); *DiMeo v. Philbin,*

502 A.2d 825, 826 (R.I.1986). Whether one of these purposes is more important than the other however, is not clear. *Compare Murphy,* 507 A.2d at 1346 (explaining that prejudgment interest "serves two purposes: it promotes early settlements, *and more importantly,* it compensates persons for the loss of use of money that was rightfully theirs") (emphasis added), *with DiMeo,* 502 A.2d at 826 ("[T]he Legislature's *primary intention* was not to add interest but to establish a device to encourage settlements of cases . . . .") (emphasis added). In a case such as this (and no doubt many like it) both purposes are in play. The point from which prejudgment interest accrues is the date from which Plaintiff's damages actually began, or put another way, from the point at which he was entitled to his money, and did not receive it; however, where, as here, the precise moment at which the rights to payments vested in Plaintiff under the contract is in dispute, another method of determining the date of accrual, one which serves the dual purposes of the statute, may well be appropriate.

### 3. *Accrual Based on Demand/Time of Filing*

Defendants claim that the accrual date is not September 4, 2004, because: (1) Plaintiff did not expect or request payment on that date; (2) no payment to Plaintiff was owed on the Beringer payments on that date; and (3) to set the accrual date at that point would not further the policies underlying the statute. According to Defendants, the correct point from which to measure an award of prejudgment interest, if any is to be awarded at all, is the date of filing because that is when Buckley made an unequivocal demand for payment to which he believed he was entitled, and is the earliest date Buckley's claim could have been settled. Defendants maintain this conclusion is consistent with the purpose of prejudgment interest.

Support for a "time of filing" or "date of demand" point of accrual under § 9–21–10 is found in *Fratus*, 147 F.3d 25. In *Fratus*, the First Circuit interpreted § 9–21–10 such that "the interest is automatically added by the clerk of courts from the date of demand until the judgment is entered." *Id.* at 30. In a footnote following this statement, the court stated: "Under R.I. Gen. Laws § 9–21–10, pre-judgment interest is technically calculated from 'the date the cause of action accrued.' Since the cause of action in this case is a demand of performance on a contract, the date of accrual for the cause of action was the date of demand, i.e., the *date the action was filed.*" *Id.* at 30 n. 6 (citing Restatement (Second) of Contracts § 354 cmt. b (1981)) (emphasis added).

■ Here, the Plaintiff's damages arose from the Transition Agreement which was the centerpiece of the trial. According to the Transition Agreement Plaintiff would receive a percentage of the increase in the value of the two businesses Cumberland and Beringer, sold while Plaintiff was employed by Defendants. The amounts due for these sales were $598,490, and $198,287 respectively. The amount due for Beringer was to be paid on an installment basis, and subject to a somewhat ambiguous condition.[10] The amount due for Cumberland did not contain any conditions.[11]

While the jury's verdict determined that Plaintiff was entitled to $758,277, the findings of the jury only set forth that Plaintiff was, at the time of the suit, due such an amount. It is not possible for this Court to accurately determine, based on the jury's verdict, the precise moment Plaintiff was originally entitled to these funds. Unlike the prejudgment interest cases decided by the Supreme Court of Rhode Island, where the dates of the plaintiffs' onset of actual damages were clearly identified, here no such date is discernable. *See Blue Ribbon Beef Co., Inc.,* 696 A.2d at 1228–29 (affirming trial justice's finding that the plaintiff began to sustain damages, due to lost profits, at the beginning of fiscal year 1982, or June 1, 1981, based on evidence that the defendant's breach began to affect the sales growth of the plaintiff's business at that point); *Miller,* 513 A.2d at 602–03 (affirming trial justice's finding that the plaintiff's damages from lost profits accrued on the specific dates he could have first exercised stock options); *Jolicoeur Furniture Co., Inc.,* 653 A.2d at 755 (remanding to Superior Court for calculation of interest from date on which the plaintiffs fully complied with the terms of their agreement).[12] Rather than speculate as to what the jury's verdict may have represented, this Court believes the best ap-

10. Paragraph 4 of the Transition Agreement states:
   A. EAR amount due for Cumberland $598,490.
   B. EAR amount due for Beringer $198,287. This amount will be paid on an installment basis based on the amounts paid by Dynisco on December 31, 2002, 2003, 2004 & 2005 (a portion, based on the calculation of the amount paid in January 2001 would be due immediately once the company has appropriate funds to afford payment).
   (Pl.'s Ex. 1.)

11. Precise determination of Plaintiff's "date of damages" is not only complicated by the

ambiguity of the conditions placed on the Beringer payments, but also by evidence introduced at trial that, while Plaintiff claimed the EAR payments were immediately and unconditionally due upon signing of the Transition Agreement, he may not have expected, nor requested payment until much later.

12. Evidence presented at trial, which the jury may have considered in reaching its verdict, indicated that Plaintiff did not expect, nor demand his EAR payments at the time the Transition Agreement was signed. The jury may have determined that, while Plaintiff may not have been entitled to the EAR proceeds at the time of signing the agreement, or shortly

proach is to apply an equitable resolution that adopts the "time of filing" approach applied by the First Circuit in *Fratus*.

In *Fratus*, the plaintiff's contract claim called for a demand of performance on a contract. 147 F.3d at 30. The First Circuit held that the district court erred in failing to award prejudgment interest to the plaintiffs from the date that they filed their complaint and demand for payment in the district court. *Id.* at 31. Here, Plaintiff's claim can reasonably be characterized as a demand for performance on the Transition Agreement because he is claiming he is presently entitled to the payments reflected in the agreement. Because a "date of damages" approach is impractical in this situation, and the Plaintiff's filing of his lawsuit provides a clear date of demand for performance, this Court finds that prejudgment interest as provided by § 9–21–10, began to accrue on May 24, 2004, the date of Plaintiff's filing of the lawsuit.[13] Furthermore, such a date reflects the jury's finding that the Plaintiff was entitled to the funds represented in

the Transition Agreement at the time he filed the suit.[14]

In coming to such a determination, the Court is mindful that one of the dual purposes of prejudgment interest—encouraging early settlements of suits—speaks not only to defendants, but to plaintiffs as well. By setting the point of accrual for prejudgment interest at the date of filing, plaintiffs are discouraged from dragging their feet to the courthouse in hopes of increasing their judgment by application of the generous 12% interest rate.[15] At the same time, the defendant's incentive to settle is maintained. Therefore, prejudgement interest, running from May, 24, 2004, to February, 10, 2005, at a rate of twelve percent per annum will be added to the judgment. This interest is calculated to be $65,316.60.[16]

## B. *Post-judgment Interest*

Plaintiff's Motion to Amend suggests that any post-judgment interest also be calculated at a rate of twelve percent as set forth in § 9–21–10.[17] Defendants con-

---

thereafter, he was, nonetheless, entitled to them at the time he filed his suit.

**13.** As Defendants pointed out at oral argument, Plaintiff was free to file his suit at any point following the signing of the Transition Agreement.

**14.** It may be noted that, with respect to the Beringer sale, the language of the Transition Agreement provides that payments will be made in installments, with the final installment date to be December 31, 2005. Any claim put forth by Defendants asserting an injustice in paying interest on the final installment, which technically has not yet come due, is off-set by the Court's equitable "date of filing" determination.

**15.** A "date of filing" approach provides predictability and promotes judicial efficiency, whereas a "date of damages" approach can lead to a dispute as to the precise date, which fails to advance either of these objectives. *See generally* Betty Campbell, *Prejudgment Interest*

*in Tennessee: It's a Fine Mess We're In! Proposed Statutory Solutions to the Inequitable Application of an Equitable Remedy*, 34 U. Mem. L.Rev. 789 (discussing the Tennessee prejudgment interest statute (which like § 9–21–10 grants courts discretion in awarding interest) and its shortcomings).

**16.** The calculation is as follows: $758,277 (judgment) × .12 (12% per annum) = $90,993.24. $90,993.24 ÷ 365 (days in the year) = $249.30 per day. $249.30 × 262 (number of days from May 24, 2004, to February 10, 2005) = $65,316.60. *See DiLuglio v. Providence Auto Body, Inc.*, 755 A.2d 757, 775 (R.I.2000) (stating that "we disfavor compounding the interest on monetary awards in a judgment when the legislature has not specifically authorized it," and pointing out that § 9–21–10 makes "no mention of compounding interest").

**17.** With respect to post-judgment interest, § 9–21–10(a) states: "Post-judgment interest

tend that such a calculation is incorrect, and that any post-judgment interest should be calculated pursuant to federal law rather than the Rhode Island statute. This Court agrees.

█ In diversity actions, post-judgment interest must be calculated according to the federal rate under 28 U.S.C. § 1961.[18]

Most circuits have ruled on this issue and have held that § 1961 is properly applied in diversity actions and therefore the federal rate of post-judgment interest applies.

Therefore, relying on the plain language of the text and the rulings on this issue in other circuits, we adhere to established precedent and hold that § 1961 governs diversity actions and that post-judgment interest in the diversity case at bar should be calculated at the federal rate.

*Ramos Rosa v. Telemundo CATV, Inc.,* 966 F.Supp. 137, 140 (D.P.R.1997) (citing *Bailey v. Chattem, Inc.,* 838 F.2d 149 (6th Cir.1988); *Nissho–Iwai Co. Ltd. v. Occidental Crude Sales, Inc.,* 848 F.2d 613 (5th Cir.1988); *Weitz Co. Inc. v. Mo–Kan Carpet, Inc.,* 723 F.2d 1382 (8th Cir.1983); *Northrop Corp. v. Triad Int'l Marketing, S.A.,* 842 F.2d 1154 (9th Cir.1988); *G.M. Brod & Co., Inc. v. U.S. Home Corp.,* 759 F.2d 1526 (11th Cir.1985)); *see also Fratus,* 147 F.3d at 30 n. 5 (noting that post-judgment interest in federal diversity cases is to be calculated in accord with 28 U.S.C. § 1961). Based on the procedures set forth in § 1961, post-judgment interest shall be calculated at the rate of 2.95 percent per annum, and therefore Plaintiff's request that post-judgment interest be calculated at 12 percent per annum is denied.

## III. *Conclusion*

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Plaintiff's Motion to Amend the Judgment to Include Prejudgment Interest is GRANTED;

2. Prejudgment interest shall be calculated at twelve percent per annum from May 24, 2004, to February 10, 2005;

3. The amended judgment shall be $823,593.60; and

4. Any post-judgment interest shall be calculated at 2.95 percent and pursuant to the procedures detailed in 28 U.S.C. § 1961.

IT IS SO ORDERED.

---

shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein."

**18.** 28 U.S.C. § 1961 states, in pertinent part:
(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. [sic] the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.
(b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually.