DECISION
Before the Court is a Motion for Entry of Civil Judgment brought by Patrick J. Marso (Plaintiff or Marso) following the Court's June 25, 2010 Decision which granted judgment to Plaintiff, finding that the parties' agreement continued in effect with regard to the compensation terms. See Marso v. Bradford SoapInt'l, Inc., 2010 R.I. Super. WL 2639757 (June 25, 2010). Defendants, Bradford Soap International, Inc., The Original Bradford Soap Works, Inc., Bradford Soap Mexico, Inc., and Hewitt Soap Works, Inc. (collectively, Defendants or Bradford) object, arguing that Plaintiff's proposed judgment erroneously runs against all Defendants, asserts incorrect dates for the accrual of prejudgment interest, and provides for the recovery of attorneys' fees and expenses.
 I Facts and Travel[1]
Bradford Soap International, Inc. (Bradford International) is a closely held Rhode Island corporation that specializes in the production of a broad range of soaps and cleansing products. The Original Bradford Soap Works, Inc., Bradford Soap Mexico, Inc., and Hewitt Soap Works, *Page 2 
Inc. are also Rhode Island corporations and each is a wholly owned subsidiary of Bradford International. John Howland (Howland) is the Chief Executive Officer, President, and Chairman of the Board of Directors of Bradford International. In 1999, Bradford International approached Argus Management Corporation (Argus), a turnaround management firm, regarding the possible turnaround of its subsidiary in the United Kingdom. Subsequently, Argus, under an agreement with Bradford International, engaged Mentor Partners, LLC (Mentor) to help restructure Bradford International's operation in the U. K. Steven LeGraw (LeGraw) and Marso were the principals of Mentor.
Pursuant to the Argus Mentor agreement, Marso relocated to the U.K. to begin the restructure and attempted turnaround of Bradford Soap Works UK, LLC. Under this agreement Bradford International paid Argus, which in turn paid Mentor, for Marso's services. While in the UK Marso reported to LeGraw. In 2001, Bradford International contracted directly with Mentor for Marso's services. See Ex. 1. Bradford International and Mentor executed an agreement (Bradford Mentor Agreement) that established Marso as an independent contractor and the Executive Vice President of The Original Bradford Soap Works, Inc. (Original Bradford). The Bradford Mentor Agreement outlined Marso's compensation which included salary, success fee, annual incentive, Long Term Incentive Plan (LTIP) participation, and completion bonus. (Ex. 1 ¶ 3.)
At the time of the execution of the Bradford Mentor Agreement, Bradford owed Mentor $127,345 of deferred compensation. According to a settlement between LeGraw and Marso, Marso is entitled to that compensation. (Ex. 2.) Marso chose to defer this compensation in addition to certain compensation due under the Bradford Mentor Agreement, including a portion of his salary from January 2003 through 2004, and bonuses for 2002 and 2003 under paragraph *Page 3 
3(c) of the Bradford Mentor Agreement. The parties agreed that the compensation would accrue interest at the rate of prime minus one percent.
Marso's employment with Bradford was not extended beyond the April 2, 2006 termination date in the Bradford Mentor Agreement. Marso and Howland continued to have discussions regarding how Bradford was going to pay the various compensation amounts owed to Marso. Marso received fourteen payments as part of his deferred compensation totaling $480,000. An interim arrangement was established to make payments until Bradford International completed certain bank refinancing plans.
On November 13, 2007 Marso filed a petition in this Court seeking the appointment of a liquidating receiver for the Defendants. On March 17, 2008 the Court denied Plaintiff's application for a liquidating receiver but permitted the Plaintiff to amend the receivership petition and file an amended complaint addressing his underlying contractual claims. Plaintiff filed an Amended Complaint seeking deferred compensation, a success fee, a 2005 annual bonus, a completion bonus, and LTIP compensation. This Court granted judgment to Plaintiff, finding that (1) Defendants owe Marso deferred compensation with interest accruing at prime minus 1 percent through November 13, 2007 and at the statutory rate of 12 percent per annum subsequent to that date; (2) under the Bradford Mentor Agreement, Marso is entitled to compensation in the amount of $200,461 for his 2005 bonus, $377,272 for his LTIP Participation, and $250,000 for his completion bonus; and (3) due to a lack of evidence, Marso is not entitled to compensation for a success fee.
 II Standard of Review
The issues presently before the Court arose in connection with a bench trial. The Court decides non-jury trials pursuant to its power under Rule 52, which provides that "[i]n all actions *Page 4 
tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon." Super. R. Civ. P. 52(a). Under Rule 52, "the trial justice sits as a trier of fact as well as law." Parella v.Montalbano, 899 A.2d 1226, 1239 (R.I. 2006) (quoting Hood v.Hawkins, 478 A.2d 181, 184 (R.I. 1984)). As a result, the trial justice "weighs and considers the evidence, passes upon credibility of the witnesses, and draws proper inferences." Id.
Furthermore, an extensive analysis and discussion of the evidence and testimony is not required to comply with the mandates of Rule 52. "Even brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case." Hilley v. Lawrence, 972 A.2d 643, 651 (R.I. 2009) (quoting Donnelly v. Cowsill,716 A.2d 742, 747 (R.I. 1998) (citation omitted)).
 III Discussion
In the instant matter the Plaintiff seeks the entry of a civil judgment which he believes is in accord with the Court's Decision. Defendants object to the proposed judgment on three grounds. First, Defendants contend that the proposed judgment should run only against Bradford International, the only Defendant that was a party to the Bradford Mentor Agreement. Defendants further argue that prejudgment interest should accrue from the date of the filing of the receivership on all claims for compensation. Finally, Defendants assert that Plaintiff is not entitled to attorneys' fees and expenses based on the plain language of paragraph 18 of the Bradford Mentor Agreement. The Court will analyze these contentions seriatim.
 A Parent/Subsidiary Liability
Defendants argue that only Bradford International should be held liable for the Plaintiff's judgment since it was the only Defendant which was a party to the Bradford Mentor Agreement. *Page 5 
Plaintiff contends that the Court should find all the Defendants liable, arguing that other than maintaining good standing status in Rhode Island, the Bradford subsidiaries observe no other corporate formality and are the alter egos of Bradford International. It is well-settled that the mere existence of a parent-subsidiary relationship between corporations is insufficient to hold the parent responsible for all breaches of contract of the subsidiary. USTCorp. v. General Road Trucking Corp.,783 A.2d 931, 940 (R.I. 2001) (citing Miller v. Dixon IndustriesCorp., 513 A.2d 597, 604 (R.I. 1986)). However, the Court must examine the totality of circumstances to determine whether there are appropriate circumstances, in the interest of justice, to pierce the veils that separate one company from another. Doe v.Gelineau, 732 A.2d 43, 48 (R.I. 1999)
The standards for piercing the corporate veil vary with the particular circumstances of each case. Miller,513 A.2d at 604. In the context of a parent-subsidiary relationship, "it must be demonstrated that the parent dominated the finances, policies, and practices of the subsidiary." Id. For instance, when two corporations are connected only through common-stock ownership, a court must respect the separateness of each entity "unless the totality of circumstances surrounding their relationship indicates that one of the corporations `is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of [the other].'"Doe, 732 A.2d at 48-49 (quoting Vucci v. Meyers BrothersParking System, Inc., 494 A.2d 530, 536 (R.I. 1985);see also United Transit Co. v. Nunes,99 R.I. 501, 508-09, 209 A.2d 215, 219 (1965).
To determine whether the parent corporation and its subsidiary maintained separate corporate identities for alter ego analysis, a court examines factors that demonstrate whether corporate formalities have been observed, including whether the parent and its subsidiaries were separately incorporated, had separate boards of directors, maintained separate financial records, *Page 6 
and had separate facilities and operating personnel. SeeRussell v. Enterprise Rent-A-Car Co. of Rhode Island,160 F.Supp.2d 239, 252 (D.R.I. 2001) (citing de Walker v. PuebloInt'l, Inc., 569 F.2d 1169, 1171 (1st Cir. 1978)). The evidence before the Court reveals that other than maintaining good standing in Rhode Island and the state where they do business, the Bradford subsidiaries observe no other corporate formalities. (Tr. February 6, 2009 310:6-25.) For instance, none of the Bradford subsidiaries have their own board of directors. It is the Board of Directors of Bradford International that undertakes corporate actions on behalf of the Bradford subsidiaries.
Further, the financials and personnel of the subsidiaries are also intertwined. For example, although the Bradford Mentor Agreement was executed between Bradford International and Mentor, the purpose of the agreement was to engage the services of Plaintiff as the Executive Vice President of Original Bradford. Additionally, even though the Bradford Mentor Agreement specifically states that Bradford International would be responsible for payment of compensation, Mentor received payments from Original Bradford and Plaintiff went on the Original Bradford payroll in 2003. Moreover, throughout the term of the Agreement, Plaintiff did not simply focus on work for Bradford International or Original Bradford, he provided services to all of the subsidiaries. Originally under the Agreement, Plaintiff relocated to the U.K. to begin the restructure and attempted turnaround of Bradford Soap Works UK, LLC. However, by the end of 2002 Plaintiff was focusing on the U.S. side of Bradford business, including due diligence associated with Bradford International's acquisition of Hewitt Soap Works. Finally, in August of 2004 Plaintiff's focus was on Bradford International's tolling arrangement with and subsequent acquisition of the Jean Charles Company (Jean Charles) by Bradford Soap Mexico, Inc. The evidence before the Court supports a finding that Bradford *Page 7 
International, as the parent corporation, dominated the finances, policies, and practices of its subsidiaries. Therefore, the Court finds that the circumstances are appropriate to pierce the corporate veil and hold not only Bradford International but also all the Defendants liable to Plaintiff for the judgment awarding compensation.
 B Prejudgment Interest
The parties also disagree on the prejudgment interest accrual date for claims other than deferred compensation.[2] Plaintiff's proposed judgment asserts that interest should accrue at the following rates: (1) For Count III, the 2005 bonus compensation, at the rate set forth in the Bradford Mentor Agreement at prime minus 1 percent from April 1, 2006 through and including November 13, 2007, and thereafter at the statutory interest rate of 12 percent per annum; (2) For Count IV, the LTIP Participation compensation, the statutory interest rate of 12 percent per annum on $377,272 from April 1, 2006 through and including June 30, 2010; and (3) For Count V, the completion bonus compensation, the statutory interest rate of 12 percent per annum on $250,000 from April 1, 2006 through and including June 30, 2010. Defendants argue that, just as with the deferred compensation claim, the Court should find that Plaintiff's claims for other forms of compensation did not accrue until he filed the instant action, making a demand for payment on the Defendants.
Under G.L. 1956 § 9-21-10, whenever a verdict is rendered or a decision made for pecuniary damages, interest is payable at the rate of 12 percent per annum "from the date the cause of actionaccrued." Miller,513 A.2d at 602 (quoting § 9-21-10(a)). Under Rhode Island *Page 8 
law, in an action for breach of contract, a court must determine at what point the plaintiff actually began to suffer damages. Buckley v. Brown Plastics Machinery, LLC,368 F. Supp. 2d 167, 170 (D.R.I. 2005) (citing Blue Ribbon BeefCo., Inc. v. Napolitano, 696 A.2d 1225, 1229 (R.I. 1997);Jolicoeur Furniture Co., Inc. v. Baldelli,653 A.2d 740, 755 (R.I. 1995); Miller, 513 A.2d at 602-03). The date the contract is breached is not necessarily the date of accrual for prejudgment interest. See Blue Ribbon Beef Co.,Inc., 696 A.2d at 1229-30 (holding that although the plaintiff's breach of contract cause of action accrued for purposes of statute-of-limitations on the date of the breach, prejudgment interest under § 9-21-10 did not accrue until two years later);Jolicoeur Furniture Co., 653 A.2d at 755 (upholding a breach of contract occurring in 1987 while delaying accrual of prejudgment interest on the resulting damages until 1989 when the plaintiffs satisfied conditions precedent to its performance). Moreover, a court has discretion to determine the extent to which interest, if any, should be awarded in a particular matter. SeeCommercial Assocs. v. Tilcon Gammino, Inc.,801 F. Supp. 939, 943 (D.R.I. 1992); see alsoGrady v. Grady, 504 A.2d 444, 448 (R.I. 1986) (finding that if it is impossible to ascertain when the various components of the award were due and payable, a court may refuse to award interest).
The focus of the Court's inquiry in determining prejudgment interest is on what date was Plaintiff entitled to receive his compensation, but ultimately did not receive it. Buckley,368 F. Supp. 2d at 171. However, when the exact date of Plaintiff's entitlement is unclear, the Court must use its discretion to determine the date of accrual. Id. Here, the Court determined that Plaintiff was entitled to certain compensation damages under the Bradford Mentor Agreement — specifically at issue here, 2005 bonus, LTIP Participation, and completion bonus compensation.See Marso, 2010 R.I. Super. WL 2639757. With regard to the completion bonus, the Bradford *Page 9 
Mentor Agreement specifically states that Plaintiff "shall be entitled to receive a $250,000 lump sum bonus on April 2, 2006." The language concerning the completion bonus is clear and unambiguous, entitling Plaintiff to receive such compensation on April 2, 2006. Therefore, since April 2, 2006 is the date Plaintiff's claim accrued on his claim for completion bonus compensation, the Court grants prejudgment interest from and after April 3, 2006.
However, an accrual date for the other forms of compensation is less clear. The Bradford Mentor Agreement had a defined period beginning February 16, 2001 and terminating April 2, 2006. However, the Agreement lacks any language specifically stating the date the 2005 bonus and LTIP compensation become due and payable. The Agreement states that Plaintiff is entitled to receive annual incentive compensation for years 2002 — 2006. The Court determined, based on the evidence at trial, that Plaintiff was entitled to a 2005 bonus in the amount of $200,461, which was based on the 2005 EBITDA of Bradford Mexico. However, nothing in the Bradford Mentor Agreement or the evidence before the Court reveals a specific date that Plaintiff was entitled to receive his 2005 bonus or that such compensation was accruing interest at the rate specified for deferred compensation, prime minus 1 percent.
Similarly, the Bradford Mentor Agreement does not specify a date upon which Plaintiff becomes entitled to the LTIP compensation. In 2003, Plaintiff and Bradford International executed an LTIP Participation Agreement granting Marso 8,410 LTIP units with a maturity date of March 31, 2006. (Ex. 4.) Under the LTIP Participation Agreement Marso was entitled to the difference between $43.03 and the fair market value of his units determined by the average of unit values on the valuation dates immediately prior to his maturity date and immediately after his maturity date "[u]nless otherwise specified by the Committee." (Ex. 3 § II(2).) According to such Agreement the maturity date means the date as of which the LTIP units become payable. *Page 10 
(Ex. 3 § I(2)(s).) However, in its Decision, the Court found that Bradford International used an alternative valuation methodology.
According to the LTIP Participation Agreement, Marso's unit values were to be determined by averaging the fair market values of the units on December 31, 2005 and December 31, 2006.[3] However, Howland presented Marso with a value of $377,272 for his LTIP units in February of 2006. (Tr. February 4, 2009 103:2-9; Ex. 5.) He again acknowledged this valuation in an email to Marso and counsel in May of 2006, explaining that the amount was "based on 50 % of the proposed LeGraw settlement amount since Marso had one-half the number of LTIP Units that LeGraw had." (Ex. 9.) Nevertheless, nothing in the evidence before the Court reveals a precise date that Plaintiff was to receive the LTIP compensation. Furthermore, emails in evidence reveal that the parties were discussing a payment schedule for all compensation due to Plaintiff which was to commence after the contemplated bank refinancing plans. (Ex. 7.)
For the foregoing reasons is it not possible for the Court to accurately determine the precise date on which Plaintiff's claims for his 2005 bonus and LTIP compensation accrued. Rather than speculate, the Court exercises its discretion and looks to the "time of filing" approach applied by the First Circuit in Fratus v.Republic Western Ins. Co.,147 F.3d 25, 30 (1st Cir. 1998). SeeBuckley, 368 F. Supp. 2d at 173 (citing Fratus,147 F.3d at 30). In Fratus, the plaintiffs commenced litigation, demanding performance and payment under certain insurance policies. 147 F.3d at 30. The First Circuit held that since the cause of action filed by the plaintiffs was "a demand of performance on a contract, the date of accrual for the cause of action was the date of demand, i.e., the date the action was filed."Id. at 30 n. 6 (citing Restatement *Page 11 (Second) of Contracts § 354 cmt. b (1981) (where "performance is to be rendered on demand, interest does not begin to run until a demand is made [and if] the action itself is considered to be the required demand, interest begins to run from the time the action is brought"). Similarly, in the instant matter Plaintiff commenced litigation seeking the payment of compensation due under the Bradford Mentor Agreement. Since the Court cannot determine the exact date Plaintiff was entitled to receive his 2005 bonus and LTIP compensation, the Court finds that prejudgment interest began to accrue as of November 13, 2007, the date of the filing of the receivership. Id.; see also Buckley,368 F. Supp. 2d at 173 (finding that in a suit for demand of performance under a contract, where a date of accrual of damages is not clear, court can look to the date of the filing of the lawsuit).
 C Attorneys' Fees
Plaintiff's proposed judgment also asserts that Plaintiff is entitled to the reasonable attorneys' fees and expenses incurred in this matter in the total sum of $120,944.08 through and including June 30, 2006. Defendants object to Plaintiff's request for attorneys' fees and expenses under paragraph 18 of the Bradford Mentor Agreement, arguing that Plaintiff only succeeded on one claim under such Agreement, the completion bonus. Plaintiff challenges such an assertion, maintaining that every compensation element that was awarded in the Decision falls within the Bradford Mentor Agreement.
The issue of whether there exists a basis for awarding attorneys' fees is generally legal in nature. Blue Cross Blue Shield ofRhode Island v. Najarian, 911 A.2d 706, 709 (R.I. 2006). "It is well settled that attorneys' fees may not be appropriately awarded to the prevailing party absent contractual or statutory authorization." Id. (quoting Insurance Companyof North America v. Kayser-Roth Corp.,770 A.2d 403, 419 (R.I. 2001)). However, even when the *Page 12 
statutory or contractual authorization exists, the award of attorneys' fees still rests within the sound discretion of the trial justice. Mullowney v. Masopust,943 A.2d 1029, 1034-35 (R.I. 2008) (citing Women's Dev. Corp. v.City of Central Falls, 764 A.2d 151, 162 (R.I. 2001)).
The Bradford Mentor Agreement specifically states under paragraph 18, which is entitled "Legal Fees," that "[a]ll reasonable costs incurred by both parties to litigate the enforcement of any of the provisions of this Agreement shall be born by the losing party in the event the dispute cannot be resolved via a Settlement Agreement." Additionally, the Court finds Defendants' argument, that Plaintiff's only successful claim for compensation under the Bradford Mentor Agreement was for a completion bonus, unavailing. Under the Bradford Mentor Agreement, Plaintiff's compensation was composed of five basic components: a weekly salary, a success fee, an annual incentive, LTIP participation, and a completion bonus. Further, the Court specifically found in its Decision that the LTIP, 2005 bonus, and completion bonus compensation were all aspects of compensation due under the Bradford Mentor Agreement.See Marso v. Bradford Soap Int'l, Inc., 2010 R.I. Super. WL 2639757 at 10. Given the clear language of the Agreement between the parties, the Court finds that Plaintiff is entitled to an award of attorney fees associated with its claims. The Plaintiff should present the court with affidavits supporting the reasonableness of Plaintiff's proposed judgment of $120,000 in attorneys' fees.
 IV Conclusion
After due consideration of all the evidence, together with the arguments advanced by counsel, the Court finds that the circumstances are appropriate to pierce the corporate veil and all Defendants are liable to Plaintiff for the judgment awarding compensation. Additionally, the Court finds that, with regard to his claim for a completion bonus, Plaintiff is entitled to prejudgment interest as of April 2, 2006. Further, since the Court cannot determine the exact *Page 13 
date Plaintiff was entitled to receive his 2005 bonus and LTIP compensation, the Court finds that prejudgment interest began to accrue as of November 13, 2007, the date of the filing of the receivership. Moreover, the Court awards attorneys' fees to Plaintiff in accordance with paragraph 18 of the Bradford Mentor Agreement.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] Substantial portions of this section were taken directly from the Court's June 25th Decision. SeeMarso v. Bradford Soap Int'l, Inc., 2010 R.I. Super. WL 2639757 at 1-3.
[2] The Court ruled from the bench on the parties' dispute concerning the calculation of prejudgment interest and the various payments made by Defendants on the deferred compensation claim subsequent to November, 2007. The parties agree that the amount of deferred compensation due as of November 13, 2007 was $388,641. The Court finds that prejudgment interest accrues on $388,641 at a rate of 12 percent per annum, calculated on a per diem basis. On the dates certain payments were made, the payment applies first to interest and then to principal. Interest continues to run thereafter on the remaining principal amount.
[3] The Court notes that a payment on the maturity date of March 31, 2006 would likely have been difficult given that the LTIP Participation Agreement valuation methodology required averaging the fair market values of the units on December 31, 2005 and December 31, 2006.